IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE ORLANDO McKINNON,         *

      Plaintiff,                      *

v.                               *        Civil Action No. GLR-22-944

CORPORAL FAZEL MALIK, et al.,     *

      Defendants.               *
                                   ***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants Corporal Fazel Malik, Corporal Derek Ivey, and Sergeant Anthony Harris' Motion to Dismiss and/or Motion for Summary Judgment. (ECF No. 24). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant Defendants' Motion.

## I.      BACKGROUND

### A.    <u>McKinnon's Amended Complaint</u>

McKinnon alleges that on October 31, 2021, while incarcerated at Montgomery County Correctional Facility ("MCCF"), Cpl. Malik was the first to respond while McKinnon and another inmate were on the floor fighting. (Am. Compl. at 1, ECF No. 18; <u>see</u> Compl. at 1, ECF No. 1-1). He asserts that Malik, without announcing himself or giving any verbal commands, sprayed McKinnon in the face with OC spray two or three times. (Am. Compl. at 1). Cpl. Ivey then entered "very aggressively," running full speed towards McKinnon while he was face down, landing with his knee in McKinnon's back twice,

which caused numbness in his legs. (Id.; 1st Suppl. Am. Compl. at 1, ECF No. 22). McKinnon states that that Malik and Ivey moved him into a camera blind spot and continued to punch him in the face. (Am. Compl. at 1). McKinnon almost passed out but managed to tell Ivey that he could not breathe. (Id. at 3). McKinnon further claims that Malik "was constantly spraying" OC spray in his face while he was face down. (1st Suppl. Am. Compl. at 2). McKinnon states the assault had ended by the time Sgt. N. Jova arrived and so she did not see anything. (Am. Compl. at 2). McKinnon states that since the incident he has suffered back pain. (1st Suppl. Am. Compl. at 1).

McKinnon further contends that Sgt. Harris is liable for helping Ivey and Malik cover up the incident. (Am. Compl. at 2). He states that the Use of Force Report compiled almost a year later on August 16, 2022, reflected statements by Ivey asserting that he kneed McKinnon in the back only once in order to separate him from the other inmate, information absent from the incident reports completed immediately following the incident. (Id.). Ivey also denied hitting McKinnon in the face. (Id. at 3). Malik allegedly corroborated this new information as well. (Id.) McKinnon contends that they are covering for one another. (Id.). He further asserts that Harris is lying about not seeing Ivey and Malik assault him. (Id.).

**B.    Defendants' Response**

Defendants respond that on October 31, 2021, McKinnon initiated a fight with another inmate in a recreation room at MCCF. (Cpl. Ivo Eseh Aff. ["Eseh Aff."] ¶ 3, ECF

No. 24-4; Video[1] at 00:44). Cpl. Eseh attests that the inmates ignored his orders to stop fighting, and both continued throwing punches. (Eseh Aff. ¶¶ 4–5; Video at 00:58–1:07). Eseh also ordered the other inmates in the recreation room, who were gathering near the fight, to back away. (Eseh Aff. ¶ 6). Malik responded to the fight and attests that he deployed OC spray in an attempt to end the altercation but was unsuccessful. (Cpl. Fazel Malik Aff. ["Malik Aff."] ¶¶ 6–7, ECF No. 24-5; Video at 1:11–1:20). The Video, although slightly obscured by a stairway, then shows Ivey running towards the inmates and jumping knee-first into the altercation, after which the inmates quickly separate. (Video at 1:20–1:25). Ivey attests that he placed a knee on McKinnon's back "from a standing position without applying [his] full weight in order to stabilize [McKinnon], who was rolling around and struggling" while he handcuffed him, with Malik's assistance. (Cpl. Derek Ivey Aff. ["Ivey Aff."] ¶ 7, ECF No. 24-6; Video at 1:33–1:48). Ivey and Malik deny punching McKinnon at any time during the incident. (Malik Aff. ¶ 10; Ivey Aff. at ¶ 8). After McKinnon was handcuffed, Ivey and Malik moved McKinnon into a standing position. (Video as 2:10–2:16). The men were almost fully obscured by a column for approximately 20 seconds until one of the officers walked away to locate McKinnon's shoe. (Id. at 2:16–2:45). McKinnon was then escorted out of the recreation room. (Id. at 3:03–3:17).

## C.    Procedural History

On April 18, 2022, McKinnon filed his Complaint against Director Angela Talley, Warden Susan Malagari, Cpl. Malik, Cpl. Ivey, and Sgt. Harris alleging that he was subject

---

[1] The Video is an exhibit attached to Defendants' Motion and was filed in hard copy with the Clerk's Office.

to excessive force. (Compl. at 1, ECF No. 1). On January 18, 2023, the Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing McKinnon's claims against Defendants Talley and Malagari and granting McKinnon leave to file an amended complaint against Defendants Malik, Ivey, and Harris. (ECF Nos. 15, 16).

McKinnon filed his Amended Complaint on February 17, 2023. (ECF No. 18). McKinnon later supplemented the Amended Complaint. (ECF No. 22). In response, Defendants filed the instant Motion to Dismiss and/or Motion for Summary Judgment. (ECF No. 24). McKinnon's March 27, 2023 filing (ECF No. 27) was construed as his response to the Motion. (See May 16, 2023 Order at 1, ECF No. 33). McKinnon was also granted leave to supplement his response, (Id.), which he did via correspondence on August 25 and October 2, 2023. (ECF Nos. 37, 38).

## II.   DISCUSSION

A.   **Standard of Review**

### 1.   Conversion

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete

4

discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must

typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." <u>Nautilus Ins. Co. v. REMAC Am., Inc.</u>, 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting <u>Evans</u>, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." <u>Harrods</u>, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." <u>Id.</u> (quoting 10B Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." <u>Hamilton v. Mayor of Balt.</u>, 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." <u>Ingle ex rel. Estate of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006) (quoting <u>Strag v. Bd. of Trs., Craven Cmty. Coll.</u>, 55 F.3d 943, 953 (4th Cir. 1995)).

Here, the Court concludes that both requirements for conversion are satisfied. McKinnon was on notice that the Court might resolve the Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented

extra-pleading materials for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Court informed McKinnon about the Motion and the need to file an opposition. (Rule 12/56 Notice at 1, ECF No. 26). In his opposition, McKinnon did not request more time to conduct discovery. Accordingly, the Court will treat the Motion as one for summary judgment and will consider exhibits outside of McKinnon's Amended Complaint in resolving Defendants' Motion where appropriate.

### 2.    Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material

fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.**   **Analysis**

**1.**   **Sgt. Harris**

Defendants argue that the Amended Complaint should be dismissed as to Sgt. Harris because McKinnon admits that Sgt. Harris did not participate in the alleged excessive force.

(Mem. Supp. Mot. Summ. J. ["Mot."] at 7, ECF No. 24-1). Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). McKinnon acknowledges in the Amended Complaint that Sgt. Harris "was not involved in the heavy[-]handed tactics," but still concludes that Harris is liable for helping Malik and Ivey "cover up" the incident. (Am. Compl. at 2). As Sgt. Harris did not participate in the alleged excessive force, the Amended Complaint against him will be dismissed and judgment will be entered in his favor.

### 2.    Excessive Force

"[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc). To state a Fourteenth Amendment claim of excessive force as a pre-trial detainee, McKinnon may prevail upon evidence that "the use of force is deliberate – i.e., purposeful or knowing." Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015). McKinnon need not detail his alleged assailant's subjective state of mind, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396–97; see also Dilworth v. Adams, 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989). This Court is obliged to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." Kingsley, 576 U.S. at 397.

This Court must look at the need to apply force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id. at 38.

Here, McKinnon initiated a fight with another inmate. Eseh ordered the inmates to stop fighting, but both ignored his instruction. Although, it is not clear whether Malik also gave an order to stop, the video clearly shows that the fight continued. Malik then attempted to stop the fight without physical force by first using OC spray to separate the inmates. Malik's use of the OC spray does not extend beyond the end of the fight nor does McKinnon allege any injury from the spray. The use of a chemical agent, such as OC spray, is not per se unreasonable; "[i]t may be used in order to control recalcitrant inmates." Kitchen v. Ickes, 116 F.Supp.3d 613, 626 (D.Md. 2015) (citing Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)); see also McCargo v. Mister, 462 F.Supp. 813, 818 (D.Md. 1978) (finding that use of pepper spray is not per se cruel and unusual punishment). The use of a chemical agent has been found reasonable where an officer uses it in an attempt to maintain the order and discipline of the institution. Kitchen, 116 F.Supp.3d at 626–27 (citing Santiago v. Walls, 599 U.S. 749, 757 (7th Cir. 2010) (finding that the Eighth

Amendment was not violated where pepper spray was used to break up an inmate fight)). In light of the other inmates congregating in the recreation room and both McKinnon and the other inmate's failure to comply with orders to stop fighting, Malik's use of the OC spray was not objectively unreasonable.

In his supplement to the Amended Complaint, McKinnon states that he no longer believes that Malik punched him during the incident. (1st Suppl. Am. Compl. at 2). Indeed, nothing to that effect can be seen in the security footage. Malik's only further physical interaction with McKinnon is to briefly kneel on the back of McKinnon's legs to keep him still while Ivey handcuffed him. See Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 906 n.11 (4th Cir. 2016) ("Applying 'just enough weight' to immobilize an individual 'continu[ing] to struggle' during handcuffing is not excessive force.") (citing Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 593 (7th Cir. 1997)). As Malik used no further force against McKinnon, the Court finds that he is entitled to the entry of summary judgment in his favor.

As to Ivey, he arrived in the recreation room to an ongoing fight despite the other officers' efforts. As the security threat remained, it is not unreasonable that some physical force would be used to separate the two inmates. While the Court acknowledges that Ivey ran toward the fight very quickly, the video shows him using his knee to swiftly separate the inmates. Ivey then moves McKinnon away from the other inmate. While the move may be described as aggressive, it was not objectively unreasonable in light of the ongoing security threat and the inmates' refusal to comply with orders.

Furthermore, nothing in the record supports a finding that Ivey punched McKinnon at any time during the incident. Although McKinnon and Ivey are partially obscured in the security footage by a column, McKinnon can be seen rolling around on the ground while Ivey, on his feet, attempts to turn McKinnon over on his stomach and hold him still to be handcuffed. Not until McKinnon is on his stomach and Malik has control of his legs does it appear that Ivey uses his knee, from a standing position, to stabilize McKinnon, who continues to struggle but is ultimately handcuffed and moved to a kneeling position. Malik then locates a shoe McKinnon lost during the fight, and once McKinnon has his shoe on, McKinnon stands up and is escorted out of the recreation room. As such, the Court cannot find that Ivey punched McKinnon or, in fact, used any force against McKinnon beyond the initial separation and using his knee to gain control while handcuffing McKinnon. While McKinnon states that he suffered some back pain following the incident, in light of the security threat presented by the ongoing fight and McKinnon's resistance to being handcuffed, Ivey's actions were not objectively unreasonable. Thus, Ivey is entitled to the entry of summary judgment in his favor.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a motion for summary judgment, is granted. The Amended Complaint is DISMISSED and judgement is entered in favor of Cpl. Malik and Cpl. Ivey. A separate Order follows.

Entered this 27th day of November, 2023.

_____ /s/

George L. Russell, III
United States District Judge